[Civ. No. 15103.   Second Dist., Div. One.   July 11, 1946.]

CLARA L. GREEN et al., Respondents, v. JOE PEDIGO, Appellant.

Austin & Austin for Appellant.

F. Henry Necasek for Respondents.

WHITE, J.—This is a wrongful death action arising out of a collision between an automobile and a bicycle, as a result of which Carlton Clinton Green, the husband of plaintiff Clara L. Green, received injuries from which he died almost immediately.

On May 18, 1944, defendant Joe Pedigo, was operating a 1941 Chevrolet automobile in a northerly direction on Paulson Avenue across the intersection of Plum Avenue in the city of Compton, Los Angeles County, while the deceased was at the same time and place propelling a bicycle in an easterly direction near and across the same intersection. Plaintiffs are the only heirs at law of said decedent.

By their complaint plaintiffs alleged that the defendant negligently and at an excessive rate of speed operated his automobile near and through the aforesaid intersection, as a result of which he collided with the bicycle propelled by decedent. Defendant's answer denied any and all negligence on his part and as an affirmative defense alleged that decedent was himself guilty of contributory negligence in that he operated his bicycle without exercising ordinary care for his own safety, as a result of which carelessness the fatal accident occurred. Defendant also affirmatively alleged that the accident, and the injuries and death ensuing therefrom, were the result of an unavoidable accident in which the defendant was free from negligence.

The cause proceeded to trial before a jury, which returned a verdict for plaintiffs in the sum of $15,000. A motion for a new trial was denied, and from the judgment entered upon the verdict defendant prosecutes this appeal.

In urging a reversal appellant presents but two grounds: (1) that the evidence fails to disclose any negligence upon his part; and (2) that the evidence discloses as a matter of law that the decedent was guilty of contributory negligence.

The record reveals that the deceased was a man 61 years of age; that he had been riding the bicycle involved in the accident several times a week for some six months; that he had been riding a bicycle since he was 35 years of age and was also licensed to operate an automobile in the State of California. There was testimony that the deceased was in good health, possessed of all of his faculties; that his hearing was good; and although he had undergone a cataract operation and wore glasses, his eyesight was good. At the trial it was stipulated that the intersection at which the accident occurred "is a square street intersection . . . not in the business district, but in the residential district. Paulson Avenue runs north and south and Plum Avenue runs east and west. The streets from curb to curb . . . are 29 feet." The accident happened between 4 and 4:10 p. m. It was a clear day, the pavements were dry, and the sun was shining from the west.

Defendant was driving his automobile north on Paulson Avenue at or near the center line of the highway. According to his testimony, he approached the intersection of Plum Avenue at a speed of from 12 to 15 miles per hour. He further testified that as he approached the intersection he "slackened up his speed" and looked both to the left and right, but saw no vehicle in either direction. After entering the intersection he looked straight ahead. Prior to the impact the defendant at no time saw the decedent, the bicycle or any other vehicle upon the highways. Defendant testified that as he was going through the intersection he felt "just a jar like my pipe had dropped off my muffler, like I had run over something, that is all"; that he thereupon applied his brakes "pretty fast . . . to see what it was." He testified that after he applied his brakes the automobile traveled not "over eight feet at the most"; but it was testified by a police officer that marks upon the pavement indicated that the automobile traveled from the center line of Plum Avenue, where the brakes were applied, for a distance of 19 feet. The body of decedent was under the front part of the automobile and a portion of the bicycle was under the left rear wheel of the automobile.

The only eyewitness to the accident was Mrs. Irene Christy,

who was seated in a parked automobile facing north about 125 to 135 feet south of the intersection. She testified she was looking toward the intersection. She first saw the decedent propelling his bicycle east on Plum Avenue near the center of the highway. At about the same time she observed defendant's automobile proceeding north on Paulson Avenue. It slowed down as it approached the intersection and then proceeded across. This witness testified that the man on the bicycle proceeded across the intersection until he arrived at about the middle thereof, when "he just put on his brakes, and then he stepped down, astride the bicycle." As to what thereafter happened we quote from the record as follows:

"Q. Then what did you see happen? A. Well, he was trying to stop, and he put on his brakes, and then he stepped down on the curb, astraddle the bike.

"Q. Was he stopped when he stepped down? A. Well, it looked to me like he was; I don't know.

"Q. Then what happened? A. The front wheel of the car, or some part of the front part of the car struck the front wheel of the bicycle.

"Q. Then what did you see next? A. Well, I saw him—— he was turning over in the air, under the car, and it threw him under the wheels.

"Q. How high did it throw him? A. Oh, about the height of the fender. . . .

"Q. Both the bicycle and the car entered the intersection about the same time, did they? A. They entered the intersection at the same time, is the way it looked to me from where I was sitting."

Mrs. Christy further testified that at the time "the front wheel of the car struck the front wheel of the bicycle" the decedent was "astraddle the bicycle with both feet on the ground. . . . He was standing."

In support of his claim that the record discloses no evidence of any negligence on his part, appellant asserts that he approached the intersection at a speed of from 12 to 15 miles per hour, slowed down slightly, looked in both directions, and proceeded across the intersection; that at no time did he see the decedent or his bicycle and was only apprised that something was amiss when he felt a bump that "seemed like it was either the muffler or running over a box that made a little noise . . . "; that the sun was in his eyes, "the deceased on an inconspicuous vehicle in a portion of the high-

way where he should not have been, and the further fact that deceased never passed in front of the defendant's car, but that the front wheel of the bicycle and the front wheel of the car came together.''

In view of the fact that defendant was traveling north at about 4 p. m., it is difficult to understand how the sun could be shining in his eyes. The answer to appellant's contentions is to be found in the fact that there was before the jury testimony of Mrs. Christy that when she first saw the decedent he was about eight feet back from the intersection and that defendant's automobile was about the same distance from the intersection; that defendant's view was unobstructed; that both vehicles ''entered the intersection at the same time.'' From this and other testimony the jury was entitled reasonably to infer that if the defendant had used ordinary care in looking to his left and right just before and as he entered the intersection, he would have seen the bicycle, and by the exercise of due care have avoided the collision.

If the defendant did see the bicycle his conduct would clearly amount to negligence, because by his own testimony it was shown that he did not slacken his speed, apply his brakes, or change the course of his vehicle after entering the intersection and while the decedent was attempting to or did stop his bicycle and was astride the same with both feet on the ground at or near the center of the intersection. Under the facts and circumstances here proven, the inference apparently drawn by the jury as indicated by their verdict, that if the defendant had looked he must have seen the bicycle both before and after it entered the intersection, cannot be disturbed on appeal.

We come now to a consideration of appellant's claim that the decedent was guilty of contributory negligence as a matter of law which proximately contributed to the fatal injuries he received. In that regard, it is first asserted that in view of the testimony that both vehicles entered the intersection at the same time, the deceased, being the driver of the vehicle on the left, should have yielded the right of way to the defendant, and that the defendant, even though he saw the decedent, had a right to assume that the latter would comply with the law and yield the right of way.

Subdivision (b) of section 550 of the Vehicle Code reads:

''When two vehicles enter an intersection from different

highways at the same time the driver of the vehicle on the left shall yield the right of way to the driver of the vehicle on the right.'' It must be conceded that a failure to yield the right of way in conformity with the statutory duty constitutes negligence. (*Hosking* v. *Danforth,* 1 Cal.App.2d 178, 181 [36 P.2d 427]; *Dell* v. *Hjorth,* 51 Cal.App.2d 576, 579 [125 P.2d 505].) The cited cases are the ones relied upon by appellant in support of his claim that in failing to yield the right of way decedent was guilty of contributory negligence as a matter of law. However, in both cases the court was concerned with a judgment rendered in favor of the defendant where the trial court found that such negligence on the part of plaintiff was the proximate cause of the accident. The question of proximate cause, negligence and contributory negligence is primarily one of fact for determination by the duly constituted arbiters thereof. Though it be conceded that defendant was strictly within the law as to the ''right of way,'' there is sufficient evidence in the record to warrant an inference by the jury that he did not use, as was his duty, the required ordinary care and skill in the control and operation of his vehicle to avoid an accident. (*Benjamin* v. *Noonan,* 207 Cal. 279, 283 [277 P. 1045].) The fact that defendant did not know another vehicle or pedestrian was on the highway will not excuse him where the jury was warranted in finding, under the evidence, that his conduct would have amounted to negligence had he known that another vehicle or pedestrian was on the highway. (*Rush* v. *Lagomarsino,* 196 Cal. 308, 317 [237 P. 1066].)

Appellant's contention that he had a right to presume that anyone approaching the intersection from his left would exercise due care in so doing, and inasmuch as the decedent failed so to do, defendant is exculpated of responsibility for the accident, is answered by the rule that one who himself is negligent may not rely upon the presumption. Since by the verdict appellant was found to be negligent, he cannot avail himself of the benefit of such presumption. (*Truitner* v. *Knight,* 83 Cal.App. 655, 662 [257 P. 447].) In the case of *Lawrence* v. *Goodwill,* 44 Cal.App. 440, 457 [186 P. 781], the following was approved as a clear and correct statement of the rule of law covering the right of way over highways: ''While the law gives to the operators of vehicles on the right what is generally termed the 'right of way,' still it does not follow as a matter of law that upon the happening of a colli-

sion between two vehicles at the intersection of two public highways that the operator of the vehicle on the left is necessarily guilty of negligence. *All the facts and circumstances surrounding the happening of the accident must be considered in determining whether such operator was in fact negligent.* (Italics ours.) In other words, the law governing the operation of vehicles must be applied to the facts and circumstances of the case, and the law which gives to the operator of a vehicle on the right the so-called 'right of way' also contemplates that such operator . . . is himself operating his vehicle in a careful and prudent manner, and with due regard to the safety of others.''

In the instant case the jury by their verdict answered in the negative the question of whether appellant was himself operating his automobile in a careful and prudent manner and with due regard to the traffic and the use of the highway by others. And by their verdict the jury also impliedly found that appellant's negligence was the proximate cause of the fatality. Though the evidence was in conflict, we are bound to recognize that the jury and the trial judge who passed upon the motion for a new trial had the benefit of personal observation of the witnesses, and that the function of an appellate tribunal is not to consider the relative weight of conflicting evidence, but only its legal sufficiency to support the challenged verdict and judgment.

Appellant next earnestly urges that the decedent was guilty of contributory negligence as a matter of law because he failed to propel his bicycle close to the right edge of the roadway, but was riding at or near the center line of the highway in violation of section 525(a) of the Vehicle Code, which section at the time of the happening of this accident read: ''Upon all roadways of sufficient width a vehicle shall be driven upon the right half of, and as close as practicable to the right-hand curb or edge of, such roadway. . . .''

In the case of *Arundel* v. *Turk*, 6 Cal.App.2d 162, 164, 165 [44 P.2d 383], it was also urged by respondent that appellant was guilty of contributory negligence as a matter of law, because, assuming she was on her right side of the road, she operated her automobile too close to the center line when there was plenty of room to the right, in violation of section 122(b) of the California Vehicle Act (section 525(a) of the Vehicle Code at the time here pertinent). In disposing of this contention the court said: ''We believe, and we have been cited no

authority to the contrary, that the section in question was enacted for the benefit of motorists traveling in the same direction." To the same effect see *Polk* v. *Weinstein,* 12 Cal. App.2d 360, 363 [55 P.2d 588]; *Matsuda* v. *Luond,* 52 Cal. App.2d 453, 459 [126 P.2d 359]; *Mathers* v. *County of Riverside,* 22 Cal.2d 781, 784 [141 P.2d 419], and cases therein cited. Furthermore, "The rule is elastic. It is not a rigid rule the violation of which under all circumstances constitutes negligence as a matter of law." (*Mathers* v. *County of Riverside, supra,* p. 785.)

We are persuaded that before any inference of negligence could be drawn against the deceased, the whole situation as to the condition of the streets, traffic, convenience, number of vehicles passing, would necessarily have to be illustrated in the evidence. These are all factors to be taken into consideration in determining whether the position on the street of the vehicle in question was such that the operator thereof was or was not guilty of negligence. (*Mauchle* v. *Panama Pacific Int. Exp. Co.,* 37 Cal.App. 715, 719 [174 P. 400].) Under the evidence with which we are here confronted we are not prepared to say that the decedent was guilty of contributory negligence as a matter of law in propelling his bicycle, as was the appellant his automobile, near the center line of the highway instead of keeping close up to the curb. The evidence shows without contradiction that both highways were free of other moving vehicles or pedestrians, and it does not appear that there was not plenty of room for free passage by appellant to either the left or right of the bicycle rider. As was said in the case of *Mauchle* v. *Panama Pacific Int. Exp. Co., supra,* at page 719: "Some discretion must be left to juries and trial courts in such cases; and we think in this case that we cannot hold as a matter of law that Mauchle was guilty of contributory negligence."

Finally, appellant contends that decedent was guilty of contributory negligence as a matter of law because his bicycle was not equipped with a horn or other contrivance for warning traffic of impending danger. We are cited to no authority holding that a bicycle must be so equipped, nor has our search for any such authority been fruitful. Appellant relies upon section 671(b) of the Vehicle Code, which provides that "The driver of a *motor* vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn. . . ." (Emphasis added.) But the answer

to appellant's claim is that a bicycle is not a *motor* vehicle, which is defined by section 32 of the Vehicle Code as ''a vehicle which is self-propelled.'' We find no provision in the Vehicle Code requiring any vehicle other than a motor vehicle to be equipped with a horn. (Veh. Code, § 671.) Section 622 of the Vehicle Code requires that every bicycle shall be equipped with a white light on the front and a red reflector on the rear, but the only provisions requiring other warning devices are applicable solely to *motor* vehicles. It therefore follows that in not having his bicycle equipped with a horn the decedent was violating no provision of law upon which a charge of contributory negligence could be predicated.

For the foregoing reasons, the judgment is affirmed.

York, P. J., and Doran, J., concurred.